**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.  1:24-cv-24089-CMA**

| | |
|---|---|
| **ELIZABETH SANTIAGO-DURAN,** <br> **and all others similarly situated** | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | **INJUNCTIVE RELIEF SOUGHT** |
| v. | |
| **VANGUARD PARKING SOLUTIONS INC,** <br> **PARADISE PARKING SYSTEMS, LLC**, <br> **and PENN CREDIT CORPORATION**, | |
| Defendants. | |

_____/

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Elizabeth Santiago-Duran ("Plaintiff" or "Santiago-Duran") sues Defendants Vanguard Parking Solutions Inc, Paradise Parking Systems LLC, and Penn Credit Corporation (collectively, "Defendants"), for violations of the federal Drivers Privacy Protection Act ("DPPA"), the Florida Consumer Collection Practices Act ("FCCPA") and the federal Fair Debt Collection Practices Act ("FDCPA") as well as under the common law for money had and received and negligence.

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 18 U.S.C. § 2724, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

2.     Venue in this District is proper because Defendants transact business in this judicial district; the complained conduct of Defendants occurred in this judicial district; this is a judicial district in which Defendants reside for venue purposes, as Defendants are subject to this Court's personal jurisdiction with respect to this action; a substantial part of the events or omissions giving

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 2

rise to the claim occurred in this judicial district; and/or a substantial part of property that is the subject of the action is situated in this judicial district.

## PARTIES

3.      Santiago-Duran is a natural person, and a citizen of the State of Florida, residing in Miami-Dade County, Florida.

4.      Defendant Vanguard Parking Solutions Inc ("Vanguard") is a Delaware corporation, with its principal place of business located in Hollywood, Florida.

5.      Defendant, Paradise Parking Systems, LLC ("Paradise") is a Florida limited liability company, with its principal place of business located in Miami, Florida.

6.      Defendant Penn Credit Corporation ("PennCredit") is a Pennsylvania corporation, with its principal place of business located in Harrisburg, Pennsylvania.

7.      Private property located at 2889 McFarlane Road, Miami, Florida 33133, holds itself open to the public for motor vehicle parking (the "Parking Garage").

8.      The identity of the owner of the real property on which the Parking Garage is situated [hereinafter "Owner"] is unknown to Plaintiff but will be obtained in discovery in this action.

9.      Owner is an entity that is separate and distinct from Vanguard.

10.     Owner is an entity that is separate and distinct from Paradise.

## DEMAND FOR JURY TRIAL

11.     Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 3

### THE PARKING SCAM

12.     On a date better known by Defendants, Owner, Paradise and Vanguard acted in concert to perpetrate a scam to greatly overcharge the public for use of the Parking Garage and to collect, and share among themselves, such overcharges in violation of applicable law as detailed *infra*.

13.      The parking scam is cloaked in criminal and civil law by use of language such as "violation" and by an alleged contract [hereinafter the "Phony Contract"] that - - according to Vanguard's unlawful, dunning letters - - is agreed to by the public by virtue of their entrance into the Parking Garage and that Vanguard refers to as the "Parking Agreement."

14.     While Vanguard asserts that the Phony Contract is "clearly displayed in the parking facility," the truth is that the Phony Contract is intentionally hidden from the public never to be seen or understood.

15.     The Parking Garage holds itself open to the public for motor vehicle parking with signage appearing from the street as depicted below:




*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 4

16.     There is nothing visible from the street that provides any notice that the rate to be charged will far exceed the reasonable market rates for comparable parking facilities in the area.

17.     As can be seen in the picture below, the language of the Phony Contract (middle sign) is completely illegible as compared to other signage in the immediate proximity thereto:



18.     The concealment of the Phony Contract is purposeful because it purports to waive important rights and purports to bind the public to draconian and unconscionable terms, including the following:

(a)     A purported waiver of the public's right to privacy as provided by state and federal law with respect to personal information and/or highly restricted personal information maintained by the state with respect to the public's drivers' licenses.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 5

(b)     A purported requirement that all charges be paid "in full . . . for the time your car is parked," within 15 minutes of entry, the failure of which is deemed by the Phony Contract to be a "breach."

(c)      After such a "breach," the Phony Contract purports to entitle Vanguard and Owner to obtain the public's personal information and/or highly restricted personal information from the state and use that information to dun the public with "a privately issued invoice setting forth the amounts [] owe[d] . . . ."

(d)     A provision purporting to prohibit any public announcement or comment concerning any dispute between the public and Vanguard or Owner.

(e)     A purported waiver of certain rights to seek redress in court, including a requirement that the public pay certain fees merely to seek any redress.

(f)     A purported waiver of certain rights to seek class relief.

(g)     A purported waiver of jury trial rights.

19.     The Phony Contract is in very small type and is virtually impossible to read even from a very close distance as depicted below:



*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 6

20. Worse, the Parking Garage contains signage prohibiting pedestrian traffic from accessing the area where the Phony Contract is situated making actual review impossible:



21. In addition to its minute font and typeface, the Phony Contract is placed in a location that is poorly lit and to the right of any vehicle that enters the Parking Garage.

22. The Phony Contract is situated such that any driver attempting in good faith to read it, necessarily blocks traffic coming into the Parking Garage off the street behind him or her potentially leading to unsafe traffic conditions, irritated drivers and breaches of the peace.

23. The placement of the Phony Contract (in a poorly lit location to the rear and right of a vehicle entering the Parking Garage and in an area marked as "No Pedestrian Access") and the very small font and typeface are all purposeful on the part of Vanguard as barriers to the public's access to the Phony Contract and as a means by which to deprive the public of any realistic opportunity to read or understand the Phony Contract.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 7

24.     As can be seen in the picture below, Vanguard certainly could have placed a larger copy of the Phony Contract to the left of the entrance in a location where it could actually be read, as Vanguard placed other signage in this location, but it chose not to do so because it does not want members of the public to have such an opportunity:



25.     In fact, these more accessibly placed signs with much larger typeface actually distract the public from the Phony Contract, which is located to the right side and further back from these signs, because they instruct the public to "Pull Forward" and provide no notice of the existence of (let alone any warning of the terms of) the Phony Contract.

26.     The Phony Contract contains more than 1,200 words.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 8

27.     The average reading speed for technical material, like legal contracts, is 50 to 75 words per minute.

28.     An average reader would take between, at least, 16 to 24 minutes to read the Phony Contract if the average reader actually was given a reasonable opportunity to do so.

29.     The Parking Garage is laid out in a manner intended to prevent the public from having a reasonable opportunity to read the Phony Contract.

30.     The Parking Garage does not comply with local regulations that require the price of parking to be clearly displayed at the entrance "in a conspicuous place" and "printed in letters of such uniform size and character as to be easily read by prospective Users."

31.     In this regard, Section 35-341, Article X, *et seq.*, of the Ordinances of the City of Miami, establishes the City of Miami Parking Facilities Surcharge Ordinance.

32.     The Regulations issued pursuant to the City of Miami Parking Facilities Surcharge Ordinance, in pertinent part, provide the following:

> At a minimum, every Operator will post and maintain in a conspicuous place, at each entrance, a sign or signs, printed in letters of such uniform size and character as to be easily read by prospective Users, showing the Operator's name, lot address, Operator's occupational license number and a schedule of rates according to one of the described methods listed below:
>
> Example A: A complete schedule listing the total charge to the patron with the parking surcharge and sales tax included and wording indicating that amounts include sales tax and surcharge.

| 1 Hour | $1.00 |
|---|---|
| 2 Hours | $1.75 |
| 3 Hours | $3.00 |
| All Day Parking | $4.50 |
| Special Events | $5.00 |
| Monthly Leases; | $65.00 |
| Annual Leases | $600.00 |

"All amounts include City of Miami Parking Surcharge (15%) and Florida State Sales Tax (7%)"

Example B: A complete schedule listing the parking fee, the parking surcharge, applicable sales tax and the total charge to the patron:

| Category | Fee | + | Surcharge | + | Sales Tax | Total |
|---|---|---|---|---|---|---|
| 1 Hour | $0.81 | + | $0.12 | + | $0.07 | $1.00 |
| 2 Hours | $1.63 | + | $0.24 | + | $0.13 | $2.00 |
| 3 Hours | $2.44 | + | $0.36 | + | $0.20 | $3.00 |

In addition to rates, all signs shall contain the following language: "The Surcharge imposed by this Parking Facility is enacted pursuant to Article X, Sec. 35-341 <u>et seq</u>., City Code and Parking Surcharge Regulations, copies of which can be obtained at Miami City Hall and at The Parking Surcharge website www.miamisurcharge.com."

*See* https://www.miamisurcharge.com/regulations.html (last visited Nov. 14, 2024).

33.     A true and correct copy of these regulations is attached hereto as Exhibit "A."

34.     These regulations define the term "Operator" as follows:

any individual, partnership, association, corporation, or other entity which <u>owns</u>, controls, conducts, leases, <u>operates</u>, or <u>causes to be operated</u> a Parking Facility which offers Parking accommodations for a Fee, Charge or Exchange. The intent of this definition is to place the burden for collection of the Surcharge on the owner of the facility and not the entity which operates the Facility if different from the owner.

*See* Ex. A (emphasis added).

35.     The Parking Garage does not clearly display the price of parking at its entrance.

36.     The Parking Garage does not display the price of parking at its entrance at all.

37.     The dearth of information provided to the public prior to entry is purposeful.

38.     There is no physical barrier (like a gate or bar) to the public's entry into the garage.

39.     There is no physical barrier (like a gate or bar) to the public's exit from the garage.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 10

40.    There is no signage indicating what the price is for parking in the Parking Garage.

41.    Thus, the Parking Garage is designed such that a member of the public can easily enter, park and leave <u>without</u> ever <u>encountering</u> a price term of any kind, let alone, <u>agreeing</u> to any price term.

42.    Through these machinations, Vanguard, Paradise, and Owner, bilk and gouge the public with prices far in excess any reasonable parking charge.

43.    In this regard, as more fully set forth *infra*, Plaintiff was charged $104.59 for a parking session that could not have exceeded 2 hours and 42 minutes.

44.    By way of comparison, parking at the Miami International Airport includes a maximum daily rate of $25. *See* https://www.miami-airport.com/airport-parking.asp (last visited Nov. 14, 2024).

45.    By way of comparison, parking at the CocoWalk garage (located nearby the Parking Garage with much better facilities and location) includes the following charges:

**Daytime Parking Rates**
Rates valid from 6:00 AM to 6:00 PM

| Monday through Friday | |
|---|---|
| 0 to 30 Minutes | $2.00 |
| 31 to 60 Minutes | $4.00 |
| Each additional hour | $4.00 |
| Maximum/Lost Ticket | $32.00 |
| Saturday & Sunday Flat Rate | $16 |

**Evening Parking Rates**
Rates valid from 6:00 PM to 6:00 AM

| Monday through Wednesday Flat Rate | $12 |
|---|---|
| Thursday through Friday Flat Rate | $16.00 |

*See* https://cocowalk.com/getting-here/ (last visited Nov. 14, 2024).

46.     Thus, while parking in the CocoWalk garage for 2 hours and 42 minutes would cost $12.00, parking for that same period in the Parking Garage (a less desirable location a block away), due to the above-described parking scam, results in a demand for payment in excess of $100.

47.     Even valet car service at The Ritz-Carlton Coconut Grove, Miami (a premium service that is vastly better than that provided by the Parking Garage) charges a maximum daily rate of only $50.

48.     In stark contrast to the above rates, the above-described parking scam is used to regularly charge the public outrageous and unreasonable amounts for parking that far exceed any reasonable market rate.

49.     The intent to charge these unlawful and exorbitant rates is readily apparent from the layout and design of the Parking Garage and the "violation notices" sent to Plaintiff.

50.     Through Vanguard's, Paradise's and Owner's use of the parking scam, numerous consumers in the state of Florida have been bilked and gouged.

51.     The identity of the victims of this parking scam are capable of ready determination by the records required to be maintained with respect to the Parking Garage.

52.     Owner is required to maintain detailed records as to the Parking Garage, pursuant to the Regulations issued under the City of Miami Parking Facilities Surcharge Ordinance, including, without limitation, the following:

Section 401 – General Requirements

a.  Each Operator shall maintain separately for each Place of Operation having separate ingress and egress, complete and accurate records of all transactions, reflecting the total amount of consideration received from all transactions and the total amount of Surcharge collected on the basis of such consideration

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 12

received. Records to be kept shall consist of, if applicable, but are not limited to:

1.  A monthly daily revenue summary showing the starting and ending ticket number, and/or transaction number, if applicable, for each series, the amount of tickets sold at each representative price and the amount of Surcharge collected.

2.  A monthly summary of all monthly parking sales reports for each facility including lists of active cards or valid hangtags, new card/hangtag issued, and deactivated card/hangtag.

3.  Unused monthly card/hangtag inventory, monthly card/hangtag inventory purchase records.

4.  A monthly validation/coupon summary showing the starting and ending number, if applicable, for each series, the amount of validations/coupon sold at each representative price and the amount of Surcharge collected.

5.  A monthly special events summary showing the starting and ending ticket number, and/or transaction number, if applicable, for each series, the amount of tickets sold, rates, and date of events.

6.  Hotel's folio account report.

7.  Parking Aged trial balance report for all locations.

8.  Bank Deposit slips and Bank Statements for each location.

9.  Business Tax Receipt and certificate of use for current period.

10. Where master meters are used, accurate records of all money collected shall be kept.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 13

> 11. Other records may be required by the Finance Department and/or Complete Consulting Services Group that fall within the guidelines of generally accepted accounting principles or other comprehensive basis of accounting.
>
> b.  <u>Preservation of records</u>. All books, records, daily record sheets and ticket stubs shall be retained by the Operator of a Parking Facility for a period of three (3) years subsequent to the year of the Transaction in accordance with record retention regulations required by the Florida Sales Tax Regulations.

53.     On information and belief, Vanguard and/or Paradise are contractually obligated to maintain these records for and on behalf of Owner.

54.     On information and belief, Vanguard and/or Paradise maintain these records for and on behalf of Owner.

## THE PRIVACY AND COLLECTION VIOLATIONS

55.     At all times material, Owner was the owner of the Parking Garage and any reasonable amount owed for use of the Parking Garage was owed to Owner.

56.     At all times material, Paradise held itself out to Vanguard as "operator and or owner" of the Parking Garage.

57.     The written agreement between Vanguard and Paradise with respect to the operation of the Parking Garage provides that  Vanguard "shall monitor the time the vehicle enters and leaves the parking garage by using camera technology . . . ."

58.     The written agreement between Vanguard and Paradise with respect to the operation of the Parking Garage provides "[f]or vehicles that violate the Parking Agreement, [Vanguard] shall generate a Parking Payment Notice and mail the Notice to the driver."

59.     The written agreement between Vanguard and Paradise with respect to the operation of the Parking Garage provides that Vanguard "will make commercially reasonable efforts to collect payment for all parking tickets on behalf of [Paradise] from the [Parking Garage]."

60.     Owner and Paradise selected Vanguard to maximize the amounts they could extract from the public with respect to the ownership and/or operation of the Parking Garage.

61.     In this regard, Vanguard offers to assist its parking-facility-owning/operating clients, including Owner and/or Paradise, with the collection of debts owed for parking. For instance, on its website, Vanguard states: "[a]t Vanguard we strive to bring the most technologically advanced solutions to help mitigate the stresses of parking management, enforcement, and payment collection" and "[o]ur LPR (License Plate Recognition) technology that we install for free, can collect parking payments, detect violations, and increase your revenue with the press of a button." *See* https://www.vanguardparking.co/ (last visited Nov. 17, 2024) (emphasis added).

62.     Vanguard boasts to its parking-facility-owning/operating clients, including Owner and Paradise, that Vanguard "will increase total parking revenue." *See* https://www.vanguardparking.co/ (last visited Nov. 17, 2024) (emphasis added).

63.     Vanguard offers to its parking-facility-owning/operating clients, including Owner and Paradise, "payment collection solutions for the 21st century." *See* https://www.vanguardparking.co/ (last visited Nov. 17, 2024) (emphasis added).

64.     Any funds collected from consumers by Vanguard, or funds paid to Vanguard by consumers, in connection with Vanguard's services provided with respect to the Parking Garage,

Case 1:24-cv-24089-CMA   Document 55   Entered on FLSD Docket 01/18/2025   Page 15 of 61

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 15

or in connection with a consumer's alleged use of the Parking Garage, were funds collected on behalf of Paradise and/or Owner.

65.     While the Phony Contract purports to provide that Vanguard's notices and invoices are "issued by Vanguard on behalf of the Owner," the written agreement between Vanguard and Paradise provide that, in collecting parking charges, Vanguard is operating "on behalf of" Paradise.

66.     Nowhere in the Phony Contract does Vanguard disclose that it does not have any contractual relationship with Owner and that, instead, Vanguard is merely acting for and on behalf of Paradise.

67.     Pursuant to the Phony Contract, all amounts collected by Vanguard, purportedly on behalf of Owner, are amounts purportedly owed only <u>after</u> the consumers (including Plaintiff) had already purported "breached" the Phony Contract and, thus, already are in default.

68.     In this regard, the Phony Contract provides "If you fail to pay in full the Parking Charge for the entire time your car is parked within 15 minutes of entering this Parking Facility, you will be in breach of this Agreement.  . . . If you are in breach of the Agreement and have not paid your Parking Charge in full, Vanguard will obtain your mailing address through available public records, including your vehicle's registration address, and will either place on your vehicle or send to you by mail, either directly or through a third-party service contracted through Vanguard, a PARKING PAYMENT NOTICE ('Notice') for payment due after using the Parking Facility."

69.     Vanguard's website confirms that its collection activities only incept after there has been such a purported "breach," which Vanguard euphemistically refers to as a "violation": "[o]nce your customer exits your lot, V-Force calculates the time they parked and verifies that the

payment was collected. If the system recognizes a <u>violation</u> we send a parking charge straight to their door and you start seeing your return." *See* https://www.vanguardparking.co/v-force (last visited Nov. 17, 2024) (emphasis added).

70. Owner is the creditor of debts incurred by consumers for their alleged use of the Parking Garage.

71. On behalf of Paradise, Vanguard collects or purports to collect the debts owed or allegedly owed to Owner by consumers for the consumers' alleged use of the Parking Garage.

72. Vanguard's collection, on behalf of Paradise, of "violations" for Owner, through the license plate imaging technology that Vanguard refers to as "V-Force," was and is the primary, if not only, feature of the services provided to Owner by Vanguard, on behalf of Paradise, and drives significant ill-gotten gains for Vanguard, Paradise, and Owner.

73. Vanguard purports to collect, on behalf of Paradise, debts purportedly owed to Owner with respect to the purported use of a parking garage owned by Owner.

74. Vanguard is a debt collector hired by Paradise and/or Owner to collect consumer debts.

75. PennCredit also collects debts purported owed to Owner with respect to the purported use of a parking garage owned by Owner.

76. PennCredit is a debt collector hired by Vanguard and/or Owner to collect consumer debts.

77. On a date better known by Vanguard, Vanguard, on behalf of Paradise, simultaneously mailed three *nearly* identical letters to Santiago-Duran to confuse and mislead Santiago-Duran into erroneously paying for use of the Parking Garage.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 17

78.     Vanguard mailed Santiago-Duran a letter internally dated June 24, 2024, regarding her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, with "**VANG/PCN/ACC679991546/149/000000149**" printed in small font on the bottom-left corner (the "149 Letter"). Attached as Exhibit B is a copy of the 149 Letter.

79.     Vanguard mailed Santiago-Duran a letter internally dated June 24, 2024, regarding her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, with "**VANG/PCN/ACC694676148/209/0000209**" printed in small font on the bottom-left corner (the "209 Letter"). Attached as Exhibit C is a copy of the 209 Letter.

80.      On a date better known by Vanguard, Vanguard mailed Santiago-Duran a letter internally dated June 24, 2024, regarding her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, with "**VANG/PCN/ACC712058873/279/0000279**" printed in small font on the bottom-left corner (the "279 Letter"). Attached as Exhibit D is a copy of the 279 Letter.

81.     The 149 Letter, 209 Letter, and 279 Letter (collectively, the "Parking Invoices") each expressly provided that Santiago "fail[ed] to pay for parking" and demanded payment from Santiago-Duran for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

82.     Payment for use of the Parking Garage is due immediately before the consumer exits the Parking Garage.

83.     The Parking Invoices identically state:

> This is a parking payment notice for failure to pay for parking at 2889 McFarlane Road Miami, Florida 33133 monitored by Vanguard Parking Solutions. By parking at the parking facility, you have agreed to the Parking Agreement and the term and conditions clearly displayed at the parking facility. You have an outstanding balance of $85.00, this amount is due 15 days from the parking payment notice date. If you pay within 15

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 18

days of the parking payment notice date, you get a discounted Parking Charge in the amount of $55.00, plus any applicable state sales tax and/or parking surcharges. **If you failed to pay within the 15 days, then you are responsible to pay the full amount of the Parking Charge up to a maximum amount of $125**.

*See* Exhibit B; Exhibit C; and Exhibit D (emphasis original).

84.    The Parking Invoices contain the following identical language and imagery:

# PARKING PAYMENT NOTICE

This is a parking payment notice for failure to pay for parking at 2889 McFarlane Road Miami, Florida 33133 monitored by Vanguard Parking Solutions. By parking at the parking facility, you have agreed to the Parking Agreement and the terms and conditions clearly displayed at the parking facility. You have an outstanding balance of $85.00, this amount is due 15 days from the parking payment notice date. If you pay within 15 days of the parking payment notice date, you get a discounted Parking Charge in the amount of $55.00, plus any applicable state sales tax and/or parking surcharges. If you failed to pay within the 15 days, then you are responsible to pay the full amount of the Parking Charge up to a maximum amount of $125.

To contact us regarding this Parking Charge, you must visit payparkingnotice.com or call (954) 228-3280.

PAYMENT BY CREDIT CARD OR DEBIT CARD IS MADE AVAILABLE ONLINE AT PAYPARKINGNOTICE.COM, OR MAIL A MONEY ORDER OR BANK CHECK MADE OUT TO VANGUARD PARKING SOLUTIONS INC. AND SENT TO 3389 SHERIDAN ST. HOLLYWOOD, FL 33021 BOX #328.

IF YOU HAVE ANY QUESTIONS PLEASE CONTACT US BY PHONE AT **(954) 228-3280** OR VISIT OUR WEBSITE PAYPARKINGNOTICE.COM

ENTRY 6/23/2024 9:20 AM    EXIT 6/23/2024 12:02 PM







THIS NOTICE IS PRIVATELY ISSUED BY VANGUARD ON BEHALF OF THE OWNER. IT IS NOT ISSUED BY A GOVERNMENTAL AUTHORITY, AND IS NOT SUBJECT TO CIVIL OR CRIMINAL PENALTIES. HOWEVER, FAILURE TO MAKE THE PAYMENT MAY RESULT IN REFERRING TO COLLECTIONS, ARBITRATION, OR FURTHER LEGAL ACTION.

IF YOU HAVE ALREADY SENT PAYMENT FOR THIS NOTICE, PLEASE DISREGARD.

*See* Exhibit B; Exhibit C; and Exhibit D.

85.    In the upper-right corner of the 149 Letter, Vanguard uses a format similar to citations issued by a governmental agency to demand payment of $67.68 from Santiago-Duran for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024:

| NAME | | AMOUNT DUE |
|---|---|---|
| SANTIAGO-DURAN, ELIZABETH | | $67.68 |
| NOTICE NUMBER | DATE ISSUED | DUE DATE |
| 1260264 | 6/24/2024 | 7/9/2024 |
| PLATE NUMBER | STATE | TYPE |
| 27EHXY | FL | NON-PAYMENT |

*See* Exhibit B.

86.     In the upper-right corner of the 209 Letter, Vanguard uses a format similar to citations issued by a governmental agency demand payment of $104.59 from Santiago-Duran for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024:

| NAME | | AMOUNT DUE |
|---|---|---|
| SANTIAGO-DURAN, ELIZABETH | | $104.59 |
| NOTICE NUMBER | DATE ISSUED | DUE DATE |
| 1260264 | 6/24/2024 | 7/9/2024 |
| PLATE NUMBER | STATE | TYPE |
| 27EHXY | FL | NON-PAYMENT |

*See* Exhibit C.

87.     In the upper-right corner of the 279 Letter, Vanguard uses a format similar to citations issued by a governmental agency demand payment of $104.59 from Santiago-Duran for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024:

| NAME | | AMOUNT DUE |
|---|---|---|
| SANTIAGO-DURAN, ELIZABETH | | $104.59 |
| NOTICE NUMBER | DATE ISSUED | DUE DATE |
| 1260264 | 6/24/2024 | 7/9/2024 |
| PLATE NUMBER | STATE | TYPE |
| 27EHXY | FL | NON-PAYMENT |

*See* Exhibit D.

88.     The Parking Invoices demand payment from Santiago-Duran for the exact same alleged use of the Parking Garage, except the 149 Letter demands payment in the amount of $67.68, while the 209 Letter and 279 Letter demand payment in the amount of $104.59.

89.     Contrary to the language of the Parking Invoices, Santiago-Duran did not agree to the "Parking Agreement" by "parking at the [Parking Garage]," nor were "the terms and conditions clearly displayed" at the Parking Garage.

90.     Using the license plate number codified on the Parking Invoices, Vanguard (on behalf of and as specifically directed by Paradise) submitted an unauthorized request to the Florida Department of Transportation and, in so doing, obtained access to Santiago-Duran's personal information and/or highly restricted personal information.

91.     At the time that Vanguard (on behalf of and as specifically directed by Paradise) submitted an unauthorized request to the Florida Department of Transportation and, in so doing, obtained access to Santiago-Duran's personal information and/or highly restricted personal information, Vanguard had no way of knowing whether Santiago-Duran had even used the Parking Garage because, even if a vehicle registered to Santiago-Duran had used the garage, Vanguard had no way of knowing whether Santiago-Duran had operated that vehicle or whether it had been operated by another.

92.     Because Vanguard has no way of knowing the identity of the actual operators of the vehicles using the Parking Garage, Vanguard's submission (on behalf of and as specifically directed by Paradise) of unauthorized requests to the Florida Department of Transportation to improperly obtain access the personal information and/or highly restricted personal information of

the registered owners of such vehicles is extremely reckless and in disregard of the rights of such registered owners.

93.     Vanguard's purpose in obtaining Santiago-Duran's personal information and/or highly restricted personal information from the Florida Department of Transportation was to directly solicit Santiago-Duran for payment of the Parking Invoices on behalf of Paradise.

94.     In this regard, the written agreement between Vanguard and Paradise requires Vanguard, on behalf of Paradise, to capture vehicle license plate information and use that information to mail a bill to the vehicle's registered owner.

95.     As of the date and time that Vanguard submitted a request (on behalf of and as specifically directed by Paradise) to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Santiago-Duran had not provided written consent to Vanguard for it to do so.

96.     Without Santiago-Duran's written consent, Vanguard could not qualify for an exception to the DPPA's prohibition against invading Santiago-Duran's privacy rights in covered records that is applicable where such records may be released "[f]or use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains." *See* 18 U.S.C.A. § 2721(b)(13). As of the date and time that Vanguard (on behalf of Paradise) submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Vanguard's purpose in obtaining Santiago-Duran's personal information and/or highly restricted personal information was so that Vanguard could send (on behalf of Paradise) a false, misleading, inflated and/or unreasonable demand for payment to Santiago-Duran with respect to the alleged use of the Parking

Garage by an unknown person operating a motor vehicle registered to Santiago-Duran. This purpose is not one that is permissible under the DPPA, 18 U.S.C § 2721.

97.     As of the date and time that Vanguard submitted (on behalf of Paradise) a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Vanguard's purpose in obtaining Santiago-Duran's personal information and/or highly restricted personal information was <u>not</u> "[f]or use in providing notice to the owners of towed or impounded vehicles." *See* 18 U.S.C.A. § 2721(b)(7).

98.     In this regard, as of the date and time that Vanguard (on behalf of Paradise) submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Santiago-Duran's vehicle was not towed or impounded.

99.     As of the date and time that Vanguard (on behalf of Paradise) submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, there was no civil, criminal, administrative, or arbitral proceeding between Santiago-Duran and Vanguard, Paradise, and/or Owner.

100.    As such, Vanguard's intended use and purpose in obtaining Santiago-Duran's personal information and/or highly restricted personal information (on behalf of Paradise) was not "in connection with any civil, criminal, administrative, or arbitral proceeding." *See* 18 U.S.C.A. § 2721(b)(4).

101.    As of the date and time that Vanguard (on behalf of Paradise) submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or

highly restricted personal information, Santiago-Duran had not threatened Vanguard, Paradise, or Owner with any civil, criminal, administrative, or arbitral proceeding.

102.    As of the date and time that Vanguard submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Vanguard had <u>not</u> initiated any civil, criminal, administrative or arbitral proceeding against any person alleged to have used the Parking Garage.

103.    As of the date and time that Vanguard submitted a request to the Florida Department of Transportation for Santiago-Duran's personal information and/or highly restricted personal information, Vanguard's efforts to obtain payment from persons, like Santiago-Duran, who were alleged to have used the Parking Garage was limited to sending bills to such persons and then sending such persons to collections if such bills were not paid.

104.    Vanguard's intended use and purpose in obtaining Santiago-Duran's personal information and/or highly restricted personal information was not one of the permissible intended uses or purposes under the DPPA, 18 U.S.C § 2721.

105.    Because Vanguard's intended use of Santiago-Duran's personal information and/or highly restricted personal information was not permissible under the DPPA, 18 U.S.C § 2721, Vanguard violated Santiago-Duran's privacy rights under the DPPA, 18 U.S.C § 2721, by scanning her vehicle's license plate and using the collected information to obtain her personal information and/or highly restricted personal information from the motor vehicle records maintained by the State of Florida and dunning her by and through the Parking Invoices.

106.    Vanguard's acts as described above were undertaken on behalf of, with the express authority and within the scope of such express authority, with the actual knowledge of and for Paradise.

107.    The Parking Invoices fail to provide or disclose a method to dispute or appeal the amount demanded for Santiago-Duran's alleged use of the Parking Garage.

108.    In light of the explicit variance in amounts demanded between the Parking Invoices and Santiago-Duran's simultaneous receipt of all three letters, had the Parking Invoices provided or disclosed a method of dispute for her to dispute or appeal the charge, she would have taken advantage of the opportunity under the circumstances.

109.    The Parking Invoices serve as Vanguard's initial communication with Santiago-Duran in connection with the debt she owed for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

110.    Vanguard is a business entity engaged in the business of soliciting consumer debts for collection.

111.    Vanguard is a business entity engaged in the business of collecting consumer debts.

112.    Vanguard regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

113.    Vanguard failed to register with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

114.    Vanguard failed to disclose in the Parking Invoices that it (Vanguard) was a debt collector.

115.    Vanguard failed to disclose in the Parking Invoices that it (Vanguard) was attempting to collect a debt.

116.    Vanguard failed to disclose the information required by 15 U.S.C. § 1692g(a) to Santiago-Duran either within the Parking Invoices or within five (5) days thereof.

117.    Vanguard lacks the contractual right to demand payment from Santiago-Duran in the amount of $67.68 her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, in the 149 Letter.

118.    Vanguard lacks the contractual right to demand payment from Santiago-Duran in the amount of $104.59 her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, in the 209 Letter and the 279 Letter.

119.    Vanguard lacks the statutory right to demand payment from Santiago-Duran in the amount of $67.68 her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, in the 149 Letter.

120.    Vanguard lacks the statutory right to demand payment from Santiago-Duran in the amount of $104.59 her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024, in the 209 Letter and the 279 Letter.

121.    On August 19, 2024, after Vanguard successfully deceived and/or otherwise wrongfully mislead Santiago-Duran as to the legitimacy of the Parking Invoices, Santiago-Duran paid $104.59 to Vanguard for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

122.    Attached as Exhibit E is the receipt of said payment.

123.     Despite having successfully collected ill-gotten funds from Santiago-Duran, Vanguard proceeded to hire an outside collection agency, PennCredit, to continue demanding payment from Santiago-Duran for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

124.     On a date better known by Vanguard and PennCredit, Vanguard transmitted to PennCredit the personal information and/or highly restricted personal information it (Vanguard) unlawfully obtained from Santiago-Duran by scanning her license plate.

125.     PennCredit is a business entity engaged in the business of soliciting consumer debts for collection.

126.     PennCredit is a business entity engaged in the business of collecting consumer debts.

127.     PennCredit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

128.     PennCredit is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

129.     PennCredit maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

130.     PennCredit specified by Rule 69V-180.080, Florida Administrative Code, of which Defendant-DC does maintain, are current to within one week of the current date.

131.     PennCredit's "Consumer Collection Agency" license to remain valid, PennCredit is required to maintain, *at minimum*, all records specified in Rule 69V-180.080, Florida Administrative Code, and keep such records current within one week of the current date.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 27

132.    Rule 69V-180.080(3)(e) of the Florida Administrative Code commands that PennCredit *shall* maintain: "[t]he debtor's account of activity disclosing… a record of payments made by the debtor, including the date received and the amount and balance owing."

133.    Rule 69V-180.080(9)(a)-(b) of the Florida Administrative Code commands that PennCredit *shall* maintain: "basic information about the debt including, at minimum… [d]ocumentation of the debt provided by the creditor," as well as "[t]he date the debt was incurred and the date of the last payment."

134.    On a date better known by PennCredit, it sent Santiago-Duran a letter internally dated August 21, 2024 (the "Collection Letter") in an attempt to collect $104.59 for her alleged use the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024. Attached as Exhibit F is a copy of the Collection Letter.

135.    Prior to PennCredit preparing and mailing the Collection Letter to Santiago-Duran, Santiago-Duran had paid the debt sought by the Collection Letter.

136.    The Collection Letter demanded payment from Santiago-Duran for a debt which had already been paid.

137.    The debt demanded in the Collection Letter represents an amount which PennCredit did not have any statutory or contractual right to assess or attempt to collect from Santiago-Duran for her alleged use the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

138.    The debt demanded in the Collection Letter represents an amount which Vanguard did not have any statutory or contractual right to assess or attempt to collect from Santiago-Duran for her alleged use the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

139.     The debt demanded in the Collection Letter represents an amount which Owner did not have any statutory or contractual right to assess or attempt to collect from Santiago-Duran for her alleged use the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

140.     PennCredit was required to provide "validation information" in the Collection Letter. *See* 12 C.F.R. § 1006.34(c).

141.     The "validation information" that PennCredit was required to provide in the Collection Letter includes, but is not limited to, "information about the debt." *See* 12 C.F.R. § 1006.34(c)(2).

142.     Among the information That PennCredit was required to provide was an "itemization date," of which could be one of five different dates, *i.e.*, (1) the last statement date; (2) the charge-off date; (3) the last payment date; (4) the transaction date; or (5) the judgment date.

143.     The "itemization date" used by PennCredit in the Collection Letter was August 12, 2024.

144.     August 12, 2024, is not the date of the last statement date.

145.     August 12, 2024, is not the charge-off date of the subject debt.

146.     August 12, 2024, is not the date the last payment date for the subject debt.

147.     August 12, 2024, is not the transaction date of the subject debt.

148.     August 12, 2024, is not the judgment date for the subject debt.

149.     The Collection Letter falsely represents that, as of August 12, 2024, Santiago-Duran owed $104.59, and between August 12, 2024, and the date of the letter, *i.e.*, August 21, 2024, Santiago-Duran paid and/or was credited $0.00 towards the debt, failing to account for the

$104.59 paid by Santiago-Duran on August 19, 2024, and, in so doing, falsely represented the amount of the debt.

150.    The Collection Letter falsely identifies the debt as arising from "retail service from Vanguard Parking" and fails to identify Paradise or Owner at all.

151.    Plaintiff has retained undersigned counsel and is obligated to pay a reasonable fee therefor.

152.    All conditions precedent to the filing of this civil lawsuit to address the grievances set forth herein have occurred, been performed, have been waived or would have been futile.

**NEGLIGENT CONDUCT OF DEFENDANTS**

153.    A contractual relationship exists between Vanguard and Paradise, whereunder Paradise engaged Vanguard to perform certain parking services for Paradise in connection with the Parking Garage. As part of the parking services bargained for under the contract, Vanguard would use license plate scanning equipment to obtain the sensitive personal information of the consumers entering and existing the Parking Garage to collect debts allegedly owed to Paradise.

154.    Vanguard is the agent of Paradise.

155.    Paradise is the principal of Vanguard.

156.    As part of the contract between Vanguard and Paradise, Paradise warranted that none of the bargained for services would violate any law.

157.    As part of the contract between Vanguard and Paradise, Vanguard warranted that none of the bargained for services would violate any law.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 30

158.     Paradise had a contractual duty to ensure that neither it nor Vanguard engaged in prohibited conduct. This duty was breached by and through the use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills.

159.     Vanguard, acting on behalf of Paradise, had a duty to comply with legal standards and avoid prohibited conduct. This duty was breached by and through the use license plate scanners without a permissible purpose and sending unlawful bills.

160.     Vanguard and Paradise had a joint contractual duty to avoid prohibited conduct and their joint actions of using license plate scanners and sending unlawful bills breached said duty.

161.     Vanguard and Paradise, individually and jointly, owed a duty to Santiago-Duran and the below-defined classes to comply with the law and breached said duty causing damages.

162.     As a result of Vanguard breaching its duty, Santiago-Duran was wrongfully misled as to the legitimacy of the Parking Invoices and was deceived into paying $104.59 to Vanguard and/or Paradise.

163.     As a result of Paradise breaching its duty, Santiago-Duran was wrongfully misled as to the legitimacy of the Parking Invoices and was deceived into paying $104.59 to Vanguard and/or Paradise.

## CLASS ACTION ALLEGATIONS

164.     Plaintiff brings this action pursuant to Rule 23, Federal Rules of Civil Procedure, individually and on behalf of two separate classes of persons: (i) the "DPPA Class" and (ii) the "Money Had and Received Class."

### *The DPPA Class*

165.    The "DPPA Class" consists of: (1) all persons whose vehicles entered the Parking Garage; (2) whose addresses were obtained by Vanguard (for and on behalf of Paradise) from a state motor vehicle department based on such persons' license plates; (3) to which addresses one or more letters were sent seeking payment with respect to such persons' alleged uses of the Parking Garage; (4) during the four year period preceding the filing of this Complaint.

166.    Excluded from the DPPA Class are (1) Defendants, (2) Defendants' members, parents, subsidiaries and affiliates, (3) Defendants' officers, directors and members of their immediate families, (4) any entity in which a Defendant has a controlling interest, (5) the legal representative, heir, successor, or assign of any such excluded party, and (6) the judicial officer(s) presiding over this action and the members of their immediate families.

### *The Money Had and Received Class*

167.    The "Money Had and Received Class" consists of: (1) all persons with Florida addresses; (2) who directly or indirectly paid monies; (3) to Vanguard or to any third party as demanded/directed by Vanguard; (4) during the four year period preceding the filing of this Complaint; (5) for parking fees or charges, no matter how denominated, including specifically "violations," for the alleged use of the Parking Garage; (6) which fees or charges exceed the reasonable, market rate for parking.

168.    Excluded from the Money Had and Received Class are (1) Defendants, (2) Defendants' members, parents, subsidiaries and affiliates, (3) Defendants' officers, directors and members of their immediate families, (4) any entity in which a Defendant has a controlling interest,

(5) the legal representative, heir, successor, or assign of any such excluded party, and (6) the judicial officer(s) presiding over this action and the members of their immediate families.

169.    **Numerosity**. The classes described above are so numerous that joinder of all individual members in one action would be impracticable. In this regard, dozens of people use the Parking Garage on a daily basis making the classes likely to exceed 20,000 persons for the four-year period at issue. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through the records maintained by Vanguard and/or Paradise, for and on behalf of Vanguard, Paradise and Owner, with respect to the Parking Garage, including but not limited to, the records required by law to be maintained as alleged *supra*.

170.    **Commonality and Predominance**. This action involves questions of law and fact that are common to the Class Members. Such common questions include, but are not limited to:

(a)    Whether Vanguard violated the privacy rights of the DPPA Class by capturing their license plates and then using same to obtain their addresses through state motor vehicle departments for purposes of sending them violation notices demanding payment of exorbitant and unreasonable charges for parking at the Parking Garage; and

(b)    Whether the parking rates charged to the Money Had and Received Class was unreasonable and exploitative amounting to price gouging.

171.    These common questions of law and fact predominate over any questions affecting only individual class members. Vanguard's breaches of the DPPA are similar, if not wholly

identical as to each of the class members. Class members' statutory damages under the DPPA also are identical. The unfair and unreasonable prices demanded by Vanguard (for and on behalf of Paradise) for alleged use of the Parking Garage can also be determined on a class basis as such rates are uniformly applied based on the duration of each parking event all of which is readily determinable on a class basis. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Proving the claims of Plaintiff will necessarily also prove the claims of each class member.

172.    **Typicality**. Plaintiff's claims are typical of the claims of the class members. The claims of Plaintiff and members of the classes are based on the same legal theories and arise from the same failures and breaches by Vanguard (for and on behalf of Paradise) to comply with federal and local law. Plaintiff and class members were all subjected to the privacy intrusion and overcharging by Vanguard.

173.    **Adequacy of Representation**. Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the other class members that she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation. Plaintiff intends to prosecute this action vigorously. Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the classes will not be harmed. Furthermore, the interests of the class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

174.    **Superiority.** As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the classes' claims. In addition, class actions are superior to any other available means for the fair

and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other class members are relatively small compared to the burden and expense that would be required to individually litigate these claims against Vanguard and Paradise, so it would be impracticable for members of the class to individually seek redress for Vanguard's and Paradise's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

175.    Plaintiff reserves the right to modify, amend, or revise the foregoing class allegations and definitions prior to moving for class certification based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

176.    Certification of classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate, *in that*, Defendant has acted on grounds generally applicable to the classes thereby making appropriate declaratory relief with respect to the classes as a whole. Plaintiff request certification of a hybrid class under Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for injunctive and equitable relief.

**COUNT 1**
**VIOLATION OF FLA. STAT. § 559.72(9)**
(Individual Claim against Vanguard)

177.    Plaintiff incorporates by reference ¶¶ 12-163 of this Second Amended Complaint.

178.    Section 559.72, Fla. Stat., of the FCCPA contains nineteen subsections and otherwise codifies an extensive list of acts and/or omissions that the FDCPA does not explicitly prohibit. Accordingly, in collecting consumer debts, pursuant to the FCCPA no person shall "[c]laim, attempt, or threaten to enforce a debt when such Person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla Stat. § 559.72(9).

179.    By and through the Parking Invoices, Vanguard sought the collection of two completely separate amounts, $104.59 and $67.68, for the same alleged use of the Parking Garage by Santiago-Duran – *i.e.*, her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024 – and demanded payment by July 9, 2024, for both amounts. Vanguard knew that it lacked any contractual right to demand triple payment from Santiago-Duran because (1) no enforceable contract existed between Vanguard and Santiago-Duran that would permit it (Vanguard) to demand payment from Plaintiff for any of the amounts demanded in the Parking Invoices, let alone triple payment of different amounts for the exact same alleged usage of the Parking Garage. Thus, by demanding payment from Santiago-Duran any of the individual Parking Invoices, Vanguard violated § 559.72(9) of the FCCPA.

180.    By and through the Parking Invoices, Vanguard asserted the legal right to collect Santiago-Duran's personal information and/or highly restricted personal information by scanning her vehicle's license plate.

181.    Vanguard, however, did so without Santiago-Duran written consent, and without a permissible purpose under either 18 U.S.C § 2721 or Fla. Stat. § 119.0712.

182.    Vanguard knew it illegally obtained Santiago-Duran's personal information and/or highly restricted personal information, as it (Vanguard) knew it lacked Santiago-Duran written consent and also lacked any permissible purpose under either 18 U.S.C § 2721 or Fla. Stat. § 119.0712.

183.    Thus, by asserting the right to unlawfully collect Santiago-Duran's personal information and/or highly restricted personal information without her authorization and without any permissible purpose, and to then use said unlawfully collected personal information and/or highly restricted personal information to bill Santiago-Duran, Vanguard violated § 559.72(9) of the FCCPA.

184.    As such, Vanguard violated Fla. Stat. § 559.72(9) in two separate and independent ways: (1) by demanding payment from Santiago-Duran any of the individual Parking Invoices; and (2) by asserting the right to unlawfully collect Santiago-Duran's personal information and/or highly restricted personal information without her authorization and without any permissible purpose, and to then use said unlawfully collected personal information and/or highly restricted personal information to bill Santiago-Duran.

185.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff the following relief

(a)    Statutory damages as provided under Fla. Stat. § 559.77(2);

(b)    Actual damages as provided under Fla. Stat. § 559.77(2);

(c)    Punitive damages as provided under Fla. Stat. § 559.77(2)

(d)    An injunction prohibiting Vanguard from engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA;

(e)    Costs and reasonable attorneys' fees pursuant to Fla. Stat. § 559.77(2); and

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 37

(f)      Any other relief that this Court deems appropriate under the circumstances.

### COUNT 2
### VIOLATION OF 15 U.S.C. § 1692e(11)
(Individual Claim against Vanguard)

186.    Plaintiff incorporates by reference ¶¶ 12-163 of this Second Amended Complaint.

187.    As more fully detailed *supra*, Vanguard uses the telephone and mail in a business the principal purpose of which is the collection of any debts *and/or* Vanguard regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

188.    Vanguard regularly collects or attempts to collect debts owed or asserted to be owed to Owner.

189.    These debts or alleged debts, including specifically the debt asserted to be owed by Plaintiff at issue in this action, are for transactions that are primarily for personal, family or household purposes.

190.    As such, Vanguard is a "debt collector" as defined by the FDCPA.

191.    Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "[t]he failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . ." 15 U.S.C. § 1692e(11).

192.    As stated above, by and through the Parking Invoices, Vanguard, as the debt collector hired by Paradise and Owner to collect debts arising from a consumer's use of the Parking Garage, demanded payment from Santiago-Duran for her alleged use of the Parking Garage from

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 38

9:20 AM to 12:02 PM on June 23, 2024. Vanguard, however, failed to disclose in any of the Parking Invoices that it (Vanguard) was a debt collector, that Vanguard was attempting to collect a debt, or that any information obtained would be used for debt collection purposes. Thus, by failing to provide the compulsory disclosures required by § 1692e(11) of the FDCPA in the Parking Invoices, Vanguard violated 15 U.S.C. § 1692e(11).

193.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff the following relief:

(a)    Statutory damages as provided under 15 U.S.C. § 1692k;

(b)    Actual damages as provided under 15 U.S.C. § 1692k

(c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(d)    Any other relief that this Court deems appropriate under the circumstances.

### COUNT 3
### VIOLATION OF 15 U.S.C. §§ 1692g and 1692e
(Individual Claim against Vanguard)

194.    Plaintiff incorporates by reference ¶¶ 12-163 of this Second Amended Complaint.

195.    As more fully detailed *supra*, Vanguard uses the telephone and mail in a business the principal purpose of which is the collection of any debts *and/or* Vanguard regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

196.    Vanguard regularly collects or attempts to collect debts owed or asserted to be owed to Owner.

197.    These debts or alleged debts, including specifically the debt asserted to be owed by Plaintiff at issue in this action, are for transactions that are primarily for personal, family or household purposes.

198.    As such, Vanguard is a "debt collector" as defined by the FDCPA.

199.    Section 1692g(a) of the FDCPA requires that a debt collector send the consumer a written notice containing the information set forth under § 1692g(a)(1)-(5) of the FDCPA either within its initial communication with the consumer in connection with the collection of a debt or within five (5) days of the debt collector's initial communication with the consumer in connection with the collection of a debt. *See* 15 U.S.C. § 1692g(a). Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

200.    Here, the Parking Invoices represent Vanguard's initial communication with Santiago-Duran in connection with the collection of the parking charges. As a result, Vanguard was required to provide Santiago-Duran with written notice of the information contained under § 1692g(a) of the FDCPA either within the Parking Invoices or within five (5) days thereof.

201.    The Parking Invoices did not disclose the information required by § 1692g(a)(3)-(5) of the FDCPA and Vanguard failed to provide Santiago-Duran with written notice of the omitted information within five (5) days of the Parking Invoices. Thus, by failing to provide Santiago-Duran with sufficient notice of the information contained under § 1692g(a)(3)-(5) of the FDCPA, Vanguard violated § 1692g and § 1692e of the FDCPA.

202.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff the following relief:

(a)    Statutory damages as provided under 15 U.S.C. § 1692k;

(b)    Actual damages as provided under 15 U.S.C. § 1692k

(c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 40

     (d)     Any other relief that this Court deems appropriate under the circumstances.

### COUNT 4
### <u>VIOLATION OF 15 U.S.C. §§ 1692e, 1692f, and 1692g</u>
(Individual Claim against PennCredit)

203.    Plaintiff incorporates by reference ¶¶ 12-163 of this Second Amended Complaint.

204.    As more fully detailed *supra*, PennCredit uses the telephone and mail in a business the principal purpose of which is the collection of any debts *and/or* PennCredit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

205.    PennCredit regularly collects or attempts to collect debts owed or asserted to be owed to Owner.

206.    These debts or alleged debts, including specifically the debt asserted to be owed by Plaintiff at issue in this action, are for transactions that are primarily for personal, family or household purposes.

207.    As such, PennCredit is a "debt collector" as defined by the FDCPA.

208.    Pursuant to 12 C.F.R. § 1006.34, a debt collector must provide a consumer with certain validation information. Section 1006.34(c)(2), of which requires "information about the debt" to be disclosed, provides an explicit list information, of which includes, but is not limited to, "the name of the creditor to whom the debt was owed on the itemization date." The itemization date identified in the Collection Letter, however, was not (1) the last statement date; (2) the charge-off date; (3) the last payment date; (4) the transaction date; or (5) the judgment date.

209.    Section 1692e of the FDCPA prohibits, among other things, "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

1692e. Section 1692e(2)(A) of the FDCPA explicitly prohibits "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). Section 1692f of the FDCPA prohibits, among other things, "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692g of the FDCPA requires debt collectors to make certain disclosures, provide consumers with certain information, and to make such disclosures and provide such information within a specific timeframe. *See* 15 U.S.C. § 1692g(a)(1)-(5).

210.    Here, PennCredit was required to identify the name of the creditor to whom the Consumer Debt was owed on the itemization date pursuant to 12 C.F.R. § 1006.34(c)(2)(iii). The Collection Letter, however, fails to identify the name of the creditor to whom the debt was owed on a permissible itemization date in violation of 12 C.F.R. § 1006.34(c)(2)(iii).

211.    PennCredit violated § 1692e of the FDCPA by failing to identify in the Collection Letter the name of the creditor to whom the Consumer debt was owed on a permissible itemization date because PennCredit is *required* by 12 C.F.R. § 1006.34(b)(3) to select a permissible itemization date when identifying the creditor in the Collection Letter and failing to do so is false, deceptive, and/or otherwise misleading to the least sophisticated consumer.

212.    PennCredit violated § 1692f of the FDCPA by failing to identify in the Collection Letter the name of the creditor to whom the Consumer debt was owed on a permissible itemization date because PennCredit is *required* by 12 C.F.R. § 1006.34(b)(3) was select a permissible itemization date when identifying the creditor in the Collection Letter and failing to do so constitutes unfair and/or otherwise unconscionable means to collect the Consumer Debt.

213.    PennCredit violated § 1692g of the FDCPA by failing to identify in the Collection Letter the name of the creditor to whom the Consumer debt was owed on a permissible itemization

date because PennCredit is *required* by 12 C.F.R. § 1006.34(b)(3) was use a valid itemization date when identifying the creditor in the Collection Letter and failing to do so in the Collection Letter.

214.    As such, by failing to identify in the Collection Letter the name of the creditor to whom the debt was owed on a valid itemization date, PennCredit violated § 1692e of the FDCPA, § 1692f of the FDCPA, and § 1692g of the FDCPA.

215.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff the following relief:

(a)    Statutory damages as provided under 15 U.S.C. § 1692k;

(b)    Actual damages as provided under 15 U.S.C. § 1692k

(c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(d)    Any other relief that this Court deems appropriate under the circumstances.

### COUNT 5
### VIOLATION OF 15 U.S.C. § 1692e(2)(A)
(Individual Claim against PennCredit)

216.    Plaintiff incorporates by reference ¶¶ 12-163 of this Second Amended Complaint.

217.    As more fully detailed *supra*, PennCredit uses the telephone and mail in a business the principal purpose of which is the collection of any debts *and/or* PennCredit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

218.    PennCredit regularly collects or attempts to collect debts owed or asserted to be owed to Owner.

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 43

219.    These debts or alleged debts, including specifically the debt asserted to be owed by Plaintiff at issue in this action, are for transactions that are primarily for personal, family or household purposes.

220.    As such, PennCredit is a "debt collector" as defined by the FDCPA.

221.    Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

222.    Here, the Collection Letter falsely represents that, as of August 12, 2024, Santiago-Duran owed $104.59, and between August 12, 2024, and the date of the letter, *i.e.*, August 21, 2024, Santiago-Duran paid and/or was credited $0.00 towards the debt, failing to account for the $104.59 paid by Santiago-Duran on August 19, 2024, and, in so doing, falsely represented the amount of the debt. Thus, by representing the amount of the debt as an amount greater than zero, PennCredit violation § 1692e(2)(A) of the FDCPA.

223.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff the following relief:

(a)    Statutory damages as provided under 15 U.S.C. § 1692k;

(b)    Actual damages as provided under 15 U.S.C. § 1692k

(c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(d)    Any other relief that this Court deems appropriate under the circumstances.

**COUNT 6**
**<u>VIOLATION OF 15 U.S.C. § 1692e</u>**
(Individual Claim against PennCredit)

224.    Plaintiff incorporates by reference ¶¶ 12-162 of this Second Amended Complaint.

225.    As more fully detailed *supra*, PennCredit uses the telephone and mail in a business the principal purpose of which is the collection of any debts *and/or* PennCredit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

226.    PennCredit regularly collects or attempts to collect debts owed or asserted to be owed to Owner.

227.    These debts or alleged debts, including specifically the debt asserted to be owed by Plaintiff at issue in this action, are for transactions that are primarily for personal, family or household purposes.

228.    As such, PennCredit is a "debt collector" as defined by the FDCPA.

229.    Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

230.    As more fully alleged *supra*, Vanguard did not have any contractual or statutory right to demand payment from Santiago-Duran in the amount of $104.59 for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

231.    Thus, PennCredit equally lacked any contractual or statutory right to demand payment from Santiago-Duran in the amount of $104.59 for her alleged use of the Parking Garage from 9:20 AM to 12:02 PM on June 23, 2024.

232.    By portraying the debt in the Collection Letter as a legitimate debt for which

PennCredit lawfully could demand payment on behalf of Vanguard, PennCredit violated § 1692e

of the FDCPA.

233.    WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment

against Vanguard, awarding Plaintiff the following relief:

(a)    Statutory damages as provided under 15 U.S.C. § 1692k;

(b)    Actual damages as provided under 15 U.S.C. § 1692k

(c)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and

(d)    Any other relief that this Court deems appropriate under the circumstances.

## COUNT 7
## VIOLATION OF THE DPPA
### (Class Action against Vanguard)

234.    Plaintiff and the DPPA Class incorporates by reference ¶¶ 12-176 of this Second

Amended Complaint Second Amended Complaint.

235.    Pursuant to 18 U.S.C.A. § 2721 of the DPPA:

A State department of motor vehicles, and any officer, employee, or
contractor thereof, shall not knowingly disclose or otherwise make
available to any person or entity:

(1) personal information, as defined in 18 U.S.C. 2725(3), about any
individual obtained by the department in connection with a motor
vehicle record, except as provided in subsection (b) of this section;
or

(2) highly restricted personal information, as defined in 18 U.S.C.
2725(4), about any individual obtained by the department in
connection with a motor vehicle record, without the express consent
of the person to whom such information applies, except uses
permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9): *Provided,*
That subsection (a)(2) shall not in any way affect the use of organ

> donation information on an individual's driver's license or affect the
> administration of organ donation initiatives in the States.

18 U.S.C.A. § 2721.

236.    The limited exceptions to the prohibition on disclosure do <u>not</u> include parking facilities. See 18 U.S.C.A. § 2721.

237.    The limited exceptions to the prohibition on disclosure do <u>not</u> include the dunning of owners of vehicles that have allegedly used a parking facility. *See* 18 U.S.C.A. § 2721.

238.    The limited exceptions to the prohibition on disclosure do <u>not</u> include the operation of the Parking Scam as more fully alleged and described *supra*. *See* 18 U.S.C.A. § 2721.

239.    After one or more vehicles registered to the Plaintiff and the DPPA Class entered the Parking Garage, Vanguard obtained their personal information from a state motor vehicle department based on their license plates and  sent one or more letters to them seeking payment with respect to their alleged uses of the Parking Garage during the four year period preceding the filing of this Complaint.

240.    In doing so Vanguard knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information for the purpose of perpetuating the Parking Scam as more fully alleged and described *supra*.

241.    Such use was not for a permissible purpose under the DPPA.

242.    Vanguard knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information for the purpose of demanding payment of inflated and improper alleged parking charges.

243.    Such use was not for a permissible purpose under the DPPA.

244.    At the time that Vanguard knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information, Plaintiff and the DPPA Class had not provided written consent to Vanguard for it to do so.

245.    At the time that Vanguard knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information there was no civil, criminal, administrative, or arbitral proceeding with respect to Plaintiff and/or the DPPA Class with respect to the Parking Garage.

246.    At the time that Vanguard knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information there was no threat to Vanguard of any litigation from Plaintiff and/or the DPPA Class.

247.    Pursuant to 18 U.S.C.A. § 2722, "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."

248.    Pursuant to 18 U.S.C.A. § 2724, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."

249.    As more fully detailed and alleged *supra*, Vanguard violated the DPPA by knowingly obtaining, disclosing or using personal information, from a motor vehicle record, for a purpose not permitted under the DPPA.

250.    Vanguard's violation of the DPPA damaged Plaintiff and the DPPA Class.

251.    Pursuant to 18 U.S.C.A. § 2724 authorizes this Court to award to Plaintiff and the DPPA Class "(1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate."

252.    As more fully alleged *supra*, Vanguard's violations of the DPPA were knowingly reckless because Vanguard improperly accessed Plaintiff and the DPPA Class's personal information and/or highly restricted personal information without even knowing whether Plaintiff or members of the DPPA Class had actually used the Parking Garage or not. In this regard, evidence of a vehicle's entry and exit of the Parking Garage does <u>not</u> prove that Plaintiff or members of the DPPA Class actually were the operators of the vehicles in question at the time of the alleged use.

253.    Vanguard did not take this simple fact into account choosing, instead, to proceed to systematically and improperly access the records maintained by state motor vehicle departments as to Plaintiff and members of the DPPA Class so that Vanguard could dun them with inflated and outrageous "violation" notices and/or turn them over to other debt collectors for further harassment in support of the parking scam.

254.   Because Vanguard has violated the DPPA in a systematically brazen and reckless manner, punitive damages are particularly appropriate in this action to punish Vanguard and to deter others from this conduct that is so clearly violative of Plaintiff and the DPPA Class's rights under federal law not to have their motor vehicle records improperly accessed.

255.   WHEREFORE, Plaintiff and each member of the DPPA Class respectfully requests this Court to enter a judgment against Vanguard, awarding Plaintiff and each member of the DPPA Class the following relief:

(a)   Actual damages, but not less than liquidated damages in the amount of $2,500 for each such violation;

(b)   punitive damages due to Vanguard's willful or reckless disregard of the law;

(c)   reasonable attorneys' fees and other litigation costs reasonably incurred;

(d)   such other preliminary and equitable relief as the court determines to be appropriate; and

(e)   Any other relief that this Court deems appropriate under the circumstances.

## COUNT 8
## MONEY HAD AND RECEIVED
(Class Action against Vanguard and Paradise)

256.   Plaintiff and the Money Had and Received Class incorporates by reference ¶¶ 12-176 of this Second Amended Complaint Second Amended Complaint.

257.   A claim for money had and received may be based upon any set of facts "which show that an injustice would occur if money were not refunded." *Moore Handley, Inc. v. Major Realty Corp.*, 340 So.2d 1238, 1239 (Fla. 4th DCA 1976). *See also Kelly v. Palmer, Reifler & Associates, PA*, 681 F. Supp. 2d 1356 (S.D. Fla. 2010).

258.   A claim for "money had and received cannot be denied merely because the plaintiff

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 50

may have other remedies to recover its loss." 66 Am. Jur. 2d Restitution and Implied Contracts §
172 (2008).

259.    Plaintiff and the Money Had and Received Class paid money to Vanguard or to an
account designated by Vanguard for alleged debts asserted by Vanguard to be owed to Owner.

260.    Vanguard and Paradise received the payments (and/or shared with each other a
portion of those payments); neither Paradise nor Vanguard returned any portion of the payments
to Plaintiff and the Money Had and Received Class despite the fact the payments made to
Vanguard and Paradise (and shared between them) included amounts which Vanguard and
Paradise did not have the legal authority or right to demand or otherwise collect from Plaintiff and
the Money Had and Received Class, including specifically above-market, exorbitant charges for
violation notices arising from the alleged use of the Parking Garage.

261.    In each case, Vanguard and Paradise received and did not return the money that had
been unlawfully obtained from Plaintiff and the Money Had and Received Class.

262.    The circumstances are such that it would be unfair for Vanguard and Paradise to
retain the benefit of their wrongful activities. Therefore, all such over-payments and over-charges
during the time frame relevant to this claim should be returned.

263.    WHEREFORE, Plaintiff, individually and on behalf of the Money Had and
Received Class, requests that the Court enter judgment in favor of Plaintiff and the Money Had
and Received Class and against Vanguard and Paradise for:

(a)    Actual damages – for the total amount improperly collected by Vanguard and
Paradise from the members of the Money Had and Received Class over the class
time period (plus interest);

(b)    An order instructing Vanguard and Paradise to disgorge their ill-gotten gains back
to the Money Had and Received Class members;

(c)     Litigation expenses and costs of the instant suit; and

(d)     Such other or further relief as the Court deems proper.

## COUNT 9
## VIOLATION OF THE DPPA
### (Class Action against Paradise)

264.    Plaintiff and the DPPA Class incorporates by reference ¶¶ 12-176 of this Second

Amended Complaint Second Amended Complaint.

265.    Paradise, as principal, employed, engaged, authorized, directed, hired, retained

and/or requested Vanguard, as agent, to obtain Plaintiff's and the DPPA Class's personal

information and/or highly restricted personal information from a state motor vehicle department

based on the license plates of Plaintiff and the DPPA Class to send one or more letters to Plaintiff

and the DPPA Class seeking payment with respect to the alleged uses of the Parking Garage by

Plaintiff and the DPPA Class.

266.    In this regard, the written agreement between Paradise and Vanguard expressly

directs Vanguard to capture vehicle license plate information "using camera technology" and mail

an invoice to the "driver."

267.    The written agreement between Paradise and Vanguard expressly states that

Paradise represents and warrants to Vanguard that Paradise's "instructions to [Vanguard] to

engage in collection efforts on behalf of [Paradise], including but not limited to the instructions to

obtained [sic] drivers' license and registration information, are in compliance with all applicable

laws."

268.    The written agreement between Paradise and Vanguard expressly states that

Paradise represents and warrants to Vanguard that Paradise's "instructions to [Vanguard] to collect

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 52

payment from Drivers will comply with all applicable laws."

269.     In doing so Paradise, as principal, employed, engaged, authorized, directed, hired, retained and/or requested Vanguard, as agent, to knowingly obtain from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information for the purpose of perpetuating the Parking Scam as more fully alleged and described *supra*.

270.     Vanguard perpetuated the Parking Scam as more fully alleged and described *supra* as an agent for and on behalf of Paradise, as principal.

271.     <u>Paradise gave Vanguard actual or apparent authority to</u> perpetuate the Parking Scam as more fully alleged and described *supra*.

272.     Vanguard was aided in accomplishing the violations of the DPPA, as alleged herein, by the existence of its agency relationship with Paradise, including the video surveillance system maintained as an aspect thereof.

273.     Pursuant to 18 U.S.C.A. § 2721 of the DPPA:

A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose or otherwise make available to any person or entity:

(1) personal information, as defined in 18 U.S.C. 2725(3), about any individual obtained by the department in connection with a motor vehicle record, except as provided in subsection (b) of this section; or

(2) highly restricted personal information, as defined in 18 U.S.C. 2725(4), about any individual obtained by the department in connection with a motor vehicle record, without the express consent of the person to whom such information applies, except uses permitted in subsections (b)(1), (b)(4), (b)(6), and (b)(9): *Provided,* That subsection (a)(2) shall not in any way affect the use of organ

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 53

> donation information on an individual's driver's license or affect the
> administration of organ donation initiatives in the States.

18 U.S.C.A. § 2721.

274.    The limited exceptions to the prohibition on disclosure do <u>not</u> include parking facilities. See 18 U.S.C.A. § 2721.

275.    The limited exceptions to the prohibition on disclosure do <u>not</u> include the dunning of owners of vehicles that have allegedly used a parking facility. *See* 18 U.S.C.A. § 2721.

276.    The limited exceptions to the prohibition on disclosure do <u>not</u> include the operation of the Parking Scam as more fully alleged and described *supra*. *See* 18 U.S.C.A. § 2721.

277.    After one or more vehicles registered to the Plaintiff and the DPPA Class entered the Parking Garage, Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, obtained their personal information from a state motor vehicle department based on their license plates and  sent one or more letters to them seeking payment with respect to their alleged uses of the Parking Garage during the four year period preceding the filing of this Complaint.

278.    In doing so Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information for the purpose of perpetuating the Parking Scam as more fully alleged and described *supra*.

279.    Such use was not for a permissible purpose under the DPPA.

280.    Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, knowingly obtained from one or more state department of

motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information for the purpose of demanding payment of inflated and improper alleged parking charges.

281.   Such use was not for a permissible purpose under the DPPA.

282.   At the time that Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information, Plaintiff and the DPPA Class had not provided written consent to Vanguard or to Paradise for either to do so.

283.   At the time that Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information there was no civil, criminal, administrative, or arbitral proceeding with respect to Plaintiff and/or the DPPA Class with respect to the Parking Garage.

284.   At the time that Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, knowingly obtained from one or more state department of motor vehicles the Plaintiff's and the DPPA Class's personal information and/or highly restricted personal information there was no threat to Vanguard or to Paradise of any litigation from Plaintiff and/or the DPPA Class.

285.   Pursuant to 18 U.S.C.A. § 2722, "[i]t shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title."

286.    Pursuant to 18 U.S.C.A. § 2724, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court."

287.    As more fully detailed and alleged *supra*, Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, violated the DPPA by knowingly obtaining, disclosing or using personal information, from a motor vehicle record, for a purpose not permitted under the DPPA.

288.    Vanguard's violation of the DPPA, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, damaged Plaintiff and the DPPA Class.

289.    Pursuant to 18 U.S.C.A. § 2724 authorizes this Court to award to Plaintiff and the DPPA Class "(1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate."

290.    As more fully alleged *supra*, Vanguard's violations of the DPPA, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, were knowingly reckless because Vanguard improperly accessed Plaintiff and the DPPA Class's personal information and/or highly restricted personal information without even knowing whether Plaintiff or members of the DPPA Class had actually used the Parking Garage or not. In this regard, evidence of a vehicle's entry and exit of the Parking Garage does <u>not</u> prove that Plaintiff or members of the DPPA Class actually were the operators of the vehicles in question at the time of

the alleged use. Paradise was aware of, authorized and directed Vanguard to proceed in this manner.

291.    Vanguard, as agent, while acting within the course and scope of its agency relationship for Paradise, as principal, did not take this simple fact into account (a fact that was known to or should have been known to Paradise) choosing, instead, (on behalf of Paradise) to proceed to systematically and improperly access the records maintained by state motor vehicle departments as to Plaintiff and members of the DPPA Class so that Vanguard could dun them with inflated and outrageous "violation" notices and/or turn them over to other debt collectors for further harassment in support of the parking scam.

292.    Because Paradise, as principal, employed, engaged, authorized, directed, hired, retained and/or requested Vanguard, as agent, to violate the DPPA in a systematically brazen and reckless manner, punitive damages are particularly appropriate in this action to punish Paradise and to deter others from this conduct that is so clearly violative of Plaintiff and the DPPA Class's rights under federal law not to have their motor vehicle records improperly accessed.

293.    WHEREFORE, Plaintiff and each member of the DPPA Class respectfully requests this Court to enter a judgment against Paradise awarding Plaintiff and each member of the DPPA Class the following relief:

        (a)    Actual damages, but not less than liquidated damages in the amount of $2,500 for each such violation;

        (b)    punitive damages due to Paradise's willful or reckless disregard of the law;

        (c)    reasonable attorneys' fees and other litigation costs reasonably incurred;

        (d)    such other preliminary and equitable relief as the court determines to be appropriate; and

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 57

(e)    Any other relief that this Court deems appropriate under the circumstances.

**COUNT 10**
**NEGLIGENCE**
(Individual Claim Against Paradise)

294.    Plaintiff incorporate by reference ¶¶ 12-163 of this Second Amended Complaint.

295.    To establish a claim for negligence, a plaintiff must demonstrate four elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) injury to the plaintiff legally caused by the defendant's breach, and (4) damages as a result of that injury. Lee v. Harper, 328 So. 3d 384, Saunders v. Baseball Factory, 361 So. 3d 365, Grieco v. Daiho Sangyo, Inc., 344 So. 3d 11.

296.    As stated above, Paradise owed Plaintiff to duty to refrain from engaging in unlawful conduct, both under the agreement entered into between Paradise and Vanguard, as well as the alleged operator of the Parking Garage. Paradise breached this duty by and through the use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran. But for Paradise engaging in said unlawful conduct, Plaintiff would not have been wrongfully misled as to the legitimacy of the Parking Invoices and deceived into paying $104.59 to Vanguard and/or Paradise. As such, by and through the use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran, Paradise negligently caused Plaintiff to suffer damages.

297.    Because Vanguard engaged in systematically brazen and reckless conduct, punitive damages are particularly appropriate in this action to punish Vanguard and to deter others from this conduct that is so clearly violative of Plaintiff's rights under federal law not to have their motor vehicle records improperly accessed.

298.   WHEREFORE, Plaintiff request this Court to enter a Judgment against Paradise awarding Plaintiff the following relief:

(a)   Actual damages;

(b)   Punitive Damages;

(c)   Reasonable Attorney's Fees and Costs; and

(d)   Any further relief this Court deems appropriate under the circumstances.

### COUNT 11
### NEGLIGENCE
(Individual Claim Against Vanguard)

299.   Plaintiff incorporate by reference ¶¶ 12-163 of this Second Amended Complaint.

300.   To establish a claim for negligence, a plaintiff must demonstrate four elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) injury to the plaintiff legally caused by the defendant's breach, and (4) damages as a result of that injury. Lee v. Harper, 328 So. 3d 384, Saunders v. Baseball Factory, 361 So. 3d 365, Grieco v. Daiho Sangyo, Inc., 344 So. 3d 11.

301.   As stated above, Vanguard owed Plaintiff to duty to refrain from engaging in unlawful conduct, both under the agreement entered into between Paradise and Vanguard, as well as the alleged operator of the Parking Garage. Vanguard breached this duty by and through the use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran. But for Vanguard engaging in said unlawful conduct, Plaintiff would not have been wrongfully misled as to the legitimacy of the Parking Invoices and deceived into paying $104.59 to Vanguard and/or Paradise. As such, by and through the use of license plate scanners

without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran, Vanguard negligently caused Plaintiff to suffer damages.

302.     Because Paradise, as principal, employed, engaged, authorized, directed, hired, retained and/or requested Vanguard, as agent, to engage in systematically brazen and reckless manner, punitive damages are particularly appropriate in this action to punish Paradise and to deter others from this conduct that is so clearly violative of Plaintiff's rights under federal law not to have their motor vehicle records improperly accessed.

303.     WHEREFORE, Plaintiff request this Court to enter a Judgment against Vanguard awarding Plaintiff the following relief:

(a)     Actual damages;

(b)     Punitive Damages;

(c)     Reasonable Attorney's Fees and Costs; and

(d)     Any further relief this Court deems appropriate under the circumstances.

### COUNT 12
### NEGLIGENCE
(Individual Claim Against Vanguard and Paradise)

304.     Plaintiff incorporate by reference ¶¶ 12-163 of this Second Amended Complaint.

305.     To establish a claim for negligence, a plaintiff must demonstrate four elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) injury to the plaintiff legally caused by the defendant's breach, and (4) damages as a result of that injury. Lee v. Harper, 328 So. 3d 384, Saunders v. Baseball Factory, 361 So. 3d 365, Grieco v. Daiho Sangyo, Inc., 344 So. 3d 11.

306.     As stated above, an agency relationship exists between Vanguard and Paradise,

whereby Paradise engaged Vanguard to perform certain parking services for Paradise in connection with the Parking Garage.

307.    Here, Vanguard and Paradise owed Plaintiff to duty to refrain from engaging in unlawful conduct, both under the agreement entered into between Paradise and Vanguard, as well as the alleged operators of the Parking Garage. Vanguard and Paradise breached their duty by and through their joint use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran. But for Vanguard and Paradise engaging in said unlawful conduct, Plaintiff would not have been wrongfully misled as to the legitimacy of the Parking Invoices and deceived into paying $104.59 to Vanguard and Paradise. As such, by and through the use of license plate scanners without a permissible purpose and the subsequent sending of unlawful bills to Santiago-Duran, Vanguard and Paradise negligently caused Plaintiff to suffer damages.

308.    Because Paradise, as principal, employed, engaged, authorized, directed, hired, retained and/or requested Vanguard, as agent, to engage in systematically brazen and reckless manner, punitive damages are particularly appropriate in this action to punish Paradise and Vanguard and to deter others from this conduct that is so clearly violative of Plaintiff's rights under federal law not to have their motor vehicle records improperly accessed.

309.    WHEREFORE, Plaintiff request this Court to enter a Judgment against Paradise and Vanguard awarding Plaintiff the following relief:

(a)    Actual damages;

(b)    Punitive Damages;

(c)    Reasonable Attorney's Fees and Costs; and

*Santiago-Duran v. Vanguard Parking Solutions, Inc. et al.*
United States District Court, Southern District of Florida
Case No.: 1:24-cv-24089
Page 61

    (d)     Any further relief this Court deems appropriate under the circumstances.

DATED: January 17, 2025

Respectfully Submitted,

| | |
|---|---|
| LINES LAW, PLLC | PATTI ZABALETA LAW GROUP |
| 201 Alhambra Circle, Suite 1060 | 3323 Northwest 55th Street |
| Coral Gables, Florida 33134 | Fort Lauderdale, Florida 33309 |
| Telephone: 786-634-4306 | Telephone: 561-542-8550 |
| | |
| /s/ Matthew L. Lines | /s/ Thomas Patti |
| Matthew L. Lines | Thomas Patti |
| Florida Bar No. 243980 | Florida Bar No. 118377 |
| E-mail: lines@lineslaw.com | E-mail: tom@pzlg.legal |
| | Victor Zabaleta |
| *Co-Counsel for Plaintiff* | Florida Bar No. 118517 |
| | E-mail: victor@pzlg.legal |
| | |
| | *Co-Counsel for Plaintiff* |

**<u>CERTIFICATE OF SERVICE</u>**

    The undersigned hereby certifies that on January 17, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                         /s/ Thomas Patti
                                         **Thomas Patti**